ANDREW, J.T.C.
In this state tax case plaintiff, Hess Realty Corporation (HRC), seeks review of a determination by the Director of the Division of Taxation (Director) revising HRC’s “business allocation factor” for purposes of its corporation business taxes for the tax years 1981 and 1982 pursuant to the Corporation Business Tax Act (CBT), N.J.S.A. 54:10A-1 to -40. HRC argues that the Director’s determination does not accurately reflect its business activity both within and outside this State. On this issue both HRC and the Director have moved for summary judgment.
*65 The CBT, enacted in 1945, imposes a franchise tax on every nonexempt foreign and domestic corporation “for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.” N.J.S.A. 54:10A-2. The amount of the franchise tax which is assessed annually to the taxpayer is computed by reference to the corporation’s entire net income and entire net worth.[1] N.J.S.A. 54:10A-5.
Entire net income is defined as “total net income from all sources,” N.J.S.A. 54:10A-4(k), while entire net worth is essentially “the present value of the investment in the corporation.” Werner Machine Co. v. Director of Division of Taxation, 17 N.J. 121, 124, 110 A.2d 89 (1954). N.J.S.A. 54:10A-4(d). In the case of a taxpayer-corporation maintaining a regular place of business outside this State (other than a statutory office), only a portion of its entire net income and entire net worth is used as a measure of the franchise tax. N.J.S.A. 54:10A. This is in recognition of the fact that only a portion of the taxpayer’s net income and net worth are fairly attributable to its corporate activity in New Jersey. Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 322, 478 A.2d 742 (1984). Therefore, N.J.S.A. 54:10A-6 (§ 6) provides a legislative formula called a “business allocation factor” which is used to determine those portions of a taxpayer’s net income and net worth that are to be used in the measure of the tax. As explained in Metromedia, Inc.:
The allocation formula consists of three factors, namely, property, payroll and receipts. Each of the three factors in the so-called three-ply formula is expressed as a fraction, the numerator of which is, respectively, the taxpayer’s New Jersey property, receipts, and payroll, and the denominator of which is the taxpayer’s total property, receipts and payroll generated by the operations of the entire enterprise. N.J.S.A. 54:10A-6(B). These fractions are averaged, and the combined fraction is then applied to the taxpayer’s total net worth and net income in order to determine the percentage or portion of net worth and income *66 properly attributable, and thus taxable, to New Jersey. [97 N.J. at 322-333, 478 A.2d 742]
If a taxpayer, however, does not maintain a regular place of business outside this State other than a statutory office then § 6 mandates that the taxpayer’s business allocation factor shall be 100%. In other words, all of. the taxpayer’s business activity is attributed to this State and thus § 6 requires the taxpayer, without apportionment, to include all of its net income and net worth as the measure of its New Jersey franchise tax. [2]
If the business allocation factor that is required to be used pursuant to the statutory direction in § 6, however, does not do justice to either the taxpayer or the State because it does not fairly reflect a taxpayer’s New Jersey business activities, N.J.S. A. 54-.10A-8 (§ 8) gives the Director discretionary authority to adjust the business allocation factor. SMZ Corp. v. Taxation Div. Director, 193 N.J.Super. 305, 315-316, 473 A.2d 982 (App.Div.1984). This broad authority is designed to enable the Director to make any number of adjustments which are “calculated to effect a fair and proper allocation of the entire net income and the entire net worth reasonably attributable to [this] State.” N.J.S.A. 54:10A-8. With these concepts in mind we can now look at the factual context of this case.
HRC is a Delaware corporation engaged in the acquisition, ownership and leasing of real property improved with gas stations in 14 states, one of which is New Jersey. HRC leases its real property solely to its parent corporation, Amerada Hess Corporation (AHC). AHC, also a Delaware corporation, is a vertically integrated petroleum products company with business operations which encompass the gamut of petroleum exploration, production, refining and marketing of petroleum and petroleum products. AHC’s varied petroleum operations are car *67 ried out by AHC and its subsidiaries, including HRC, which perform substantial activities for its parent. AHC functions not only in the United States but has extensive operations in other countries as well.
During the years 1981 and 1982, the tax years at issue, HRC was engaged in the purchasing and leasing of real property in New Jersey and 13 other states.[3] Essentially, the properties owned by HRC were leased to its parent, AHC, who erected and, in some cases, operated the gas stations located at the various sites. In other cases the stations were operated by independent dealers. HRC’s business income consisted of the rental income which it received from its parent, AHC.
The corporate headquarters of HRC was, during the years at issue, and is now, located in an office building in New York City, New York, where it has been located since the early 1970’s when HRC moved there from New Jersey. These premises are not, however, owned or leased by HRC, but rather are leased by HRC’s parent, AHC, from an unrelated third party. It appears that the offices were acquired by AHC for use by AHC and its domestic subsidiaries, including HRC, and the size, location and decoration of the offices were determined by AHC based on its needs. Accordingly, because of the manner in which AHC and its various subsidiaries use the New York City offices, HRC does not pay rent or any other business expenses attributable to the operation of the premises. These expenses are borne solely by AHC. Additionally, HRC’s name did not appear in any building directory at the New York City location.
On the other hand, HRC indicated that its corporate headquarters in New York City was the official repository for its original real estate records, its certificate of incorporation, bylaws, shareholder consents, authorizations to do business and *68 minutes of its board of directors’ meetings. HRC’s sole bank account was and is also located in New York City.
During 1981 and 1982, HRC had three employees who were compensated by HRC, two bookkeepers (one employed from January 1, 1981 to November 1, 1981 and another employed from December 1, 1981 to December 31, 1982), both of whom were located in an office owned by AHC in Woodbridge, New Jersey and a gas station field representative who had an office at an oil terminal site, also owned by AHC, in Baltimore, Maryland.
HRC also had six officers, two of whom were also directors, during this period, all of whom were compensated by HRC’s parent, AHC. Of the officers, the president (also a director), one vice-president (also a director), the secretary and treasurer were located in the New York City offices. It was indicated by HRC, and not controverted by the Director, that the officers and directors of HRC, acting in concert with AHC’s operating committee, were responsible for the managerial decisions regarding HRC’s real estate and leasing operations in the 14 states in which HRC transacted its business. These decisions included defining the outlines of HRC’s real estate requirements, approval of the purchase of land, buildings and easements and the sale of surplus real estate.
Although HRC’s business was supervised and directed by HRC’s officers and directors acting together with AHC’s operating committee, field operations were carried out, in the 14 states in which HRC owned real property, by six real estate site representatives, a manager of gas station real estate and a number of gas station field representatives. All of these individuals with the exception of one gas station field representative were employees of HRC’s parent, AHC.
The six real estate site representatives, although employees of AHC, rendered services to HRC by locating, and negotiating for the purchase of, gas station sites and obtaining all necessary governmental approvals for the use of the properties. The record reveals that in 1981 and 1982 the activity engaged in by *69 the one real estate site representative assigned to New Jersey was limited to obtaining required governmental licenses and permits for HRC’s real estate in New Jersey inasmuch as HRC did not purchase any additional properties in New Jersey during the tax years at issue.
The real estate site representatives were supervised by the manager of gas station real estate. It was the manager’s function to inspect sites selected for purchase, review the relevant documents and then forward these papers to HRC’s corporate headquarters in New York City. At that point HRC’s management would decide whether to purchase a proposed site. During the years at issue the manager, while residing in Oceanside, New York, utilized AHC’s Woodbridge, New Jersey office as his base of operations. HRC indicated that approximately 60% of the manager’s time was spent in New Jersey while the balance was spent travelling or in New York.
As noted previously, all the gas station field representatives with one exception were employees of AHC. These individuals essentially rendered services to HRC by performing on-site inspections of HRC’s real estate. The sole gas station field representative who was an employee of HRC utilized certain office space at an oil terminal owned by AHC in Baltimore, Maryland as his base of operations. HRC did not pay any rent for the use of the Baltimore location nor did HRC pay for any business expenses attributable to the operation of the premises. As with HRC’s corporate headquarters in New York City, those expenses were borne by HRC’s parent, AHC. Additionally, the size, decoration and location of the office space in Baltimore were controlled not by HRC, but by AHC, and were dependent upon AHC’s business needs.
For the years at issue, the day-to-day administration of HRC’s operation of gas station properties was conducted at the offices of HRC’s parent, AHC, in Woodbridge, New Jersey. It was from this office that the manager of gas station real estate, an AHC employee, rendered supervisory services to HRC and AHC in the management of HRC properties as well *70 as other AHC business. Additionally, HRC’s legal documents, prior to submission to its corporate headquarters in New York, were reviewed in the Woodbridge, New Jersey office. During the tax periods at issue, HRC identified the Woodbridge, New Jersey office as its principal place of business on both its state and federal tax returns.[4] In addition, the bookkeepers employed by HRC were located at this site.
The affidavit of Raymond K. Stafford, the treasurer of HRC, submitted in support of HRC’s motion for summary judgment, sets forth the uncontroverted values of HRC’s properties in the 14 states in which it engaged in its leasing operations. The total value of all of its real estate for the relevant tax years was $28,808,218 for 1981 and $28,695,706 for 1982, while the value of HRC’s New Jersey holdings was reflected at $3,534,-680 for 1981 and $3,406,428 for 1982. Therefore, for both 1981 and 1982 the value of the property located in New Jersey was approximately 12% of the value of HRC’s total holdings (1981— $3,534,680 $28,808,218 = 12.27%; 1982 — $3,406,428 $28,-695,707 = 11.87%).
The total rental income derived from HRC’s properties (which is all of HRC’s business income) was $2,970,629 in 1981 and $3,401,878 in 1982, while the rental income received from HRC’s real estate in New Jersey was $425,453 for 1981 and $416,273 for 1982. Arithmetical computations reveal that approximately 14% of HRC’s total rental income was obtained from its New Jersey properties in 1981 and approximately 12% was derived from HRC’s New Jersey properties in 1982. (1981 — $425,453 -h-$2,970,629 = 14.32%; 1982 — $416,273 $3,401,878 = 12.24%).
HRC filed timely New Jersey CBT returns for tax years 1981 and 1982. In so doing, however, it calculated its franchise taxes by using the three-factor apportionment formula set forth in N.J.S.A. 54-.10A-6 (§ 6) which, as previously noted, is the *71 formula that the statute directs be used when a corporate taxpayer maintains a regular place of business, other than a statutory office, outside of New Jersey. This formula is the same method which HRC has used to apportion its entire net income and entire net worth on its returns since 1965, the first year it filed a CBT return in this State, and for all years after 1982. For both 1981 and 1982, the § 6 apportionment formula yielded an allocation of approximately 19%,[5] i.e., 19% of HRC’s business activity for tax purposes was attributable to New Jersey. The taxes which resulted from this apportionment were $24,483 for 1981 and $33,706 for 1982 which were paid by HRC when its returns were filed.
Defendant, Director of the Division of Taxation, through a notice of deficiency assessment dated November 27, 1985, challenged HRC’s use of the three-factor apportionment formula in its 1981 and 1982 CBT returns. The Director concluded that HRC’s claim of maintaining a regular place of business outside of New Jersey had not been substantiated and thus HRC was not eligible for formulary apportionment under § 6. Accordingly, the Director required HRC to use a business allocation factor of 100%. The Director’s conclusion required HRC to apportion all of its net income, although attributable to multistate activities, and all of its net worth, although attributable to its assets in 14 states, entirely to New Jersey. This determination increased HRC’s total franchise taxes to $127,466 for 1981 *72 and to $182,206 for 1982.[6]
As could have been expected, HRC objected to the Director’s determination that 100% of its net income and net worth had to be attributed to New Jersey in the computation of HRC’s franchise tax. HRC requested a hearing on the deficiency assessment claiming: (1) that it maintained regular places of business outside of New Jersey, and thus, was statutorily authorized to use the § 6 three-factor apportionment formula, or alternatively, (2) it was entitled to an adjustment under N.J.S.A. 54:10A-8 (§ 8) in the form of credit for income taxes paid to other jurisdictions pursuant to N.J.A. C. 18:7-8.3(b), and lastly, (3) that the Director waive penalties and interest.
Consequently, in a revised assessment dated May 21, 1986, the Director reaffirmed his position that HRC did not maintain a regular place of business outside of New Jersey, and thus, rejected HRC’s claim that it was entitled to apportion its net income and net worth under the § 6 three-factor formula. HRC’s alternative claim for relief, however, pursuant to § 8 and N.J.A. C. 18:7-8.3(b), in the form of credit for income taxes paid to other jurisdictions was granted. The income taxes paid by HRC to other jurisdictions were recomputed pursuant to the requirements set forth at N.J.A.C. 18:7-83(b). Although HRC had paid income taxes to other jurisdictions in the amount of $50,502 for 1981 and $79,767 for 1982, pursuant to the formula set forth in N.J.A.C. 18:7-8.3(b) the credits for taxes paid to other jurisdictions were calculated at $37,470 for 1981 and $62,572 for 1982. Hence, HRC did not receive full credit for all income taxes paid to other states.
Moreover, HRC received no consideration in the Director’s § 8 adjustment with regard to the net worth taxes paid by HRC to other taxing states. The Director did, however, abate all penalties and reduce the interest to the prime rate of 9.5%. The *73 total franchise taxes (exclusive of any interest) due from HRC were thus determined to be $89,996 for 1981 and $119,634 for 1982.
Thereafter, HRC commenced this action seeking to have the revised 1981 and 1982 deficiency assessments imposed by the Director set aside. At the pretrial conference in this matter this court inquired of Director’s counsel if any other relief pursuant to § 8 might be appropriate. This matter was reconsidered by the Director and the conclusion reached was that no further adjustment was warranted with the possible exception of providing HRC with credit for net worth taxes paid to other jurisdictions in a manner consistent with the formula for income tax credits set forth in N.J.A.C. 18:7-8.3(b).
Plaintiff contends that it is entitled to utilize the business allocation factor set forth in § 6 on three bases. First, it asserts that it maintains regular places of business outside this State other than statutory offices, and thus, by operation of § 6 the prescribed allocation factor must be utilized. Second, plaintiff maintains that to deny it the right to allocate in accordance with the § 6 business allocation factor constitutes a violation of the Due Process and Commerce Clauses of the United States Constitution. Lastly, plaintiff contends that it is statutorily entitled to utilize the § 6 business allocation factor because it is the most appropriate formula under § 8 which is “calculated to effect a fair and proper allocation” of plaintiff’s activities both within and outside this State. See N.J.S.A. 54:10A-8.
In response, defendant asserts that plaintiff, during the tax years in question, did not “maintain a regular place of business outside this State other than a statutory office” and therefore plaintiff does not have a statutory right, pursuant to § 6, to use the three-factor business allocation formula set forth in § 6. Second, defendant argues that this court may not have to reach the constitutional issue posed by plaintiff because § 8 permits this court to review the Director’s decision and determine whether that decision “has resulted in an unfair or inequitable computation of plaintiff’s tax liability.” If so, this court can *74 direct defendant to make further adjustments pursuant to § 8. If, on the other hand, this court finds that the tax liability as determined by the Director is neither unfair nor inequitable under § 8, then defendant maintains that, inasmuch as the constitutional issue has to be considered, defendant’s decision did not produce an unconstitutional result.
This court finds that defendant’s suggestion as to the manner in which review of the questions presented in this case should proceed is well founded. Initially, it is the function of this court to insure that not only are federal and state constitutional rights enforced, but also those rights that accrue under our state statutes. Thus, if relief is appropriate under our statutory law, constitutional issues need not be addressed. Indeed, constitutional issues should not be reached and determined unless it is absolutely necessary to the disposition of the litigation. Donadio v. Cunningham, 58 N.J. 309, 325-326, 277 A.2d 375 (1971). Thus, the issues relating to our statutory law will first be considered.
I.

Did plaintiff maintain a regular place of business other than a statutory office outside this State?

Section 6 of the CBT provides, in pertinent part, as follows:
In the case of a taxpayer which maintains a regular place of business outside this State other than a statutory office, the portion of its entire net worth .. .and the portion of its entire net income to be used as a measure of the tax imposed by .. .this act, shall be determined by multiplying such entire net worth and entire net income, respectively by an allocation factor which shall be the average of the [taxpayer’s property, receipts and payroll] fractions____
In the case of a taxpayer which does not maintain a regular place of business outside this State other than a statutory office, the allocation factor shall be 100%. [Emphasis supplied]
While § 6 does not provide a definition of the phrase “maintains a regular place of business outside this State other than a *75 statutory office” the Director pursuant to his rule-making authority, N.J.S.A. 54:10A-27, has adopted a regulation which implements § 6 by setting forth a definition:
(a) A regular place of business is any bona fide office (other than a statutory office), factory, warehouse, or other space of the taxpayer which is regularly maintained, occupied and used by the taxpayer in carrying on its business and in which one or more regular employees are in attendance.[7] [N.J.A.C. 18:7-7.2]
HRC does not challenge the Director’s definition, but rather argues that it meets the standard set forth in the regulation because HRC has “substantial income generating activities outside the State,” and thus, contends that it is statutorily entitled to use the § 6 three-factor formula. Specifically, HRC asserts that it maintained regular places of business outside this State in New York City, New York, Baltimore, Maryland and at numerous other locations in the 13 states, other than New Jersey, in which plaintiff had gas stations which it leased to its parent, AHC.
In the first of a number of cases construing the language of the Director’s regulatory definition of a “regular place of business” our Appellate Division in Hoeganaes Corp. v. Dir. of Div. of Tax, 145 N.J.Super. 352, 367 A.2d 1182 (App.Div.1976) had to decide whether space made available for the taxpayer’s business in the homes of its employees constituted regular places of business. In that case the taxpayer required that each of its sales engineers set aside space in their homes for the purpose of conducting the taxpayer’s business in the six states in which the employees were located.
Each space had the usual office equipment and a technical library supplied at the expense of the taxpayer. While the taxpayer paid for the business-related telephone charges of its engineer-employees, it did not pay rent for the space used by its employees for office purposes. The taxpayer’s employees spent only 20% to 25% of their working time in their “home *76 offices” and there were no other regular employees in attendance while the engineers were away. The court noted that the taxpayer had virtually no control over the area, size, decoration and location of the space in each of the engineer’s homes.
In denying allocation the court focused on three objective factors. First, it construed the word “maintain” to mean “pay rent.” Therefore, it held that the taxpayer did not maintain regular places of business outside this State, in both the statutory and regulatory sense, because it failed to own, rent or be financially responsible, in anyway, for the expenses of the out-of-state locations.
Second, the court recited the taxpayer’s lack of control over the out-of-state space and felt that this also undermined the taxpayer’s position substantially. Lastly, allocation was denied because the taxpayer did not have regular employees in attendance during normal working hours while the engineers were away.
It is noteworthy that the Appellate Division emphasized these objective criteria even though a major part of the taxpayer’s business was conducted outside of this State. As Judge Matthews expressed in his dissent, the taxpayer’s New Jersey sales represented $186,000 out of a total of approximately $12 million of sales in the United States. Id. at 363, 367 A 2d 1182 (Matthews, J.A.D., dissenting). Indeed, Judge Matthews’ brief discussion in dissent highlights the objective factors by which a “regular place of business” determination is to be made.
Subsequent to Hoeganaes, the troublesome issue of whether a taxpayer maintained a regular place of business outside this State was presented in the following line of cases: Rocappi, Inc. v. Taxation Div. Director, 3 N.J.Tax. 311, 182 N.J.Super. 163, 440 A.2d 96 (Tax Ct.1981); SMZ Corp. v. Taxation Div. Director, 5 N.J.Tax 232 (Tax Ct.1982), rev’d and rem’d on other grounds 193 N.J.Super. 305, 473 A.2d 982 (App.Div.1984); Shelter Dev. Corp. v. Taxation Div. Director, 6 N.J.Tax 547 (Tax Ct.1984). In each of these cases the court followed the objective criteria of Hoeganaes in determining whether an alleged place of business constituted a “regular place of busi *77 ness” within the meaning of the Director’s regulation. The court, in each instance, held that the taxpayer did not meet the requisite objective standards for a regular place of business, and thus, was not permitted to use the three-factor apportionment formula in § 6.
The Director argues, based on Hoeganaes and its progeny, that HRC did not maintain a regular place of business outside this State within the meaning of § 6 and the regulation. I am constrained to agree.[8]
With respect to HRC’s corporate headquarters in New York City, the Director points out that HRC did not pay rent or any other expenses attributable to the New York City location. The New York City offices were leased by HRC’s parent, AHC and space was allocated based on AHC’s needs not those of plaintiff, HRC. Control of the premises was totally within AHC, not plaintiff, HRC. While four of HRC’s corporate officers, who were employees of AHC, had their base of operations in New York City there is nothing in the record to demonstrate that HRC had its employees in regular attendance at the New York office building. The fact that the New York City location was denominated HRC’s “corporate headquarters” makes no differ *78 ence. Unless a taxpayer’s corporate headquarters fulfills the objective criteria of Hoegcmaes it is of no significance.
The Director further maintains that HRC’s location in Baltimore, Maryland, in which HRC used certain office space in an oil terminal owned by AHC, also, does not meet the required objective criteria of the decided cases. Again, I must agree. HRC paid no rent or expenses related to the operation of the office space in Baltimore. Nor did HRC control the area, size, decoration or location of the space. HRC’s parent, AHC, exercised the requisite control according to AHC’s needs, not those of HRC.
Lastly, HRC contends that it maintained regular places of business at each of the locations at which it owned and leased gas station properties in 13 states other than New Jersey. As the Director points out, however, the operation of those properties while different in degree is not different in kind from the factual circumstances in SMZ Corp. v. Taxation Div. Director, supra. There, the Appellate Division held that mere leasing of a gasoline station in Connecticut, on a net lease basis, to a tenant did not constitute maintaining a regular place of business outside this State within the meaning of § 6 and N.J.A.C. 18:7-7.2. 193 N.J.Super. at 315, 473 A.2d 982. The record does not reveal that there are any employees of HRC in regular attendance at any of these gas station sites nor that any of these facilities were maintained to conduct the business of HRC at these locations. As the Director notes, the mere fact that HRC owned these properties is not sufficient to qualify any of them as a “regular place of business” pursuant to statute, regulation and the relevant decisional law.
HRC maintains, however, that it meets the original purpose of the regular place of business requirement in § 6. As this court noted in Shelter Dev. Corp. v. Taxation Div. Director, supra, that requirement was to insure that a taxpayer had something “beyond a minimal presence outside this State before allocation would be permitted.” 6 N.J.Tax at 552. Therefore, HRC argues that “the key to the Director’s regulation is the existence of substantial income generating activities outside *79 the State.”[9] Further, HRC points to its large percentage of real estate holdings outside New Jersey and the large percentage of rental income that is generated by those properties outside New Jersey. Thus, the argument goes, HRC meets the purpose of the statute and regulation and must be permitted to use the three-factor apportionment formula.
In contrast, the Director responds that “neither the statute nor the regulation attaches any significance to the quantum of a taxpayer’s extraterritorial income generating activity in determining the existence of a regular place of business.” Rather, notes the Director, the exclusive test is the existence of a regular place of business as defined by the regulation and relevant case law.
Although I must acknowledge that HRC’s argument is rather persuasive,[10] I find that it is somewhat foreclosed by the appellate decisions that have construed the Director's definitional regulation, especially in view of the emphasis placed on the objective factors previously enumerated.
HRC asserts that the relevant factors are not exclusive and that other things may be taken into consideration. A fair reading of the relevant decisions, however, does not support this assertion. Absent compliance with the objective considerations, it must be concluded that plaintiff simply does not maintain a regular place of business outside this State.
Although this court has followed, as it must, the dictates of the Hoeganaes and SMZ appellate decisions, there is an unset *80 tling aspect of the issue that lies beneath the surface of the “regular place of business” opinions; that is, whether the mandated § 6 allocation factor (100% if one does not maintain a regular place of business outside this State) achieves fair apportionment under the circumstances. HRC points out that, due to the nature of its business activities in the 14 states in which it owns and leases its gas station properties, there is little difference between its business in New Jersey and in the other 13 jurisdictions. HRC does not center its activities in New Jersey. If anything, HRC contends that its “nerve center” is at its corporate headquarters in New York City where its business and managerial decisions are made.
HRC asserts that if the objective factors of Hoegcmaes are the exclusive criteria for determining “a regular place of business” then HRC does not maintain a regular place of business anywhere. If this is correct, and the Director does not dispute this contention, then why should the measures of HRC’s franchise tax, i.e., its entire net income and entire net worth, be attributed totally to New Jersey?
In response, the Director points out that it has not disregarded HRC’s out-of-state activities, but rather it has adjusted the 100% allocation factor that § 6 requires, by giving credit to HRC for the income taxes that it has paid to other jurisdictions in accordance with N.J.S.A. 54:10A-8 (§ 8). The Director thus concedes that, even though HRC did not maintain a regular place of business outside this State as defined, a 100% allocation factor would not fairly and properly reflect the portions of HRC’s net income and net worth that are reasonably attributable to New Jersey. The next issue to be considered, then, is whether the Director’s § 8 adjustment does secure a fair apportionment.
II.

Did the Director’s § 8 adjustment produce a fair result?

It is an implicit premise of the CBT that under certain circumstances the apportionment formulas outlined in § 6, i.e., *81 either the three-factor formula or the 100% business allocation factor, may not fairly approximate a taxpayer’s true net worth or net income attributable to its New Jersey activities. See F.W. Woolworth Co. v. Director of Div. of Tax, 45 N.J. 466, 498, 213 A.2d 1 (1965); Metromedia, Inc. v. Director, Div. of Taxation, supra, 97 N.J. at 323, 478 A.2d 742; SMZ Corp. v. Taxation Div. Director, supra, 193 N.J.Super. at 317-318, 473 A.2d 982 and Silent Hoist v. Tax. Div. Dir., 9 N.J.Tax 178, 192-195 (Tax Ct.1987).
As a consequence, the Legislature invested the Director with broad authority to adjust a § 6 allocation factor if it does not properly reflect a taxpayer’s business activity reasonably attributable to this State. N.J.S.A. 54A0A-8 (§ 8) provides:
If it shall appear to the [Director] that an allocation factor determined pursuant to section 6 does not properly reflect the activity, business, receipts, capital, entire net worth or entire net income of a taxpayer reasonably attributable to the State, he may adjust it by:
(a) excluding one or more of the factors therein;
(b) including one or more other factors, such as expenses, purchases, contract values (minus subcontract values);
(c) excluding one or more assets in computing entire net worth; or
(d) excluding one or more assets in computing an allocation percentage; or
(e) applying any other similar or different method calculated to effect a fair and proper allocation of the entire net income and the entire net worth reasonably attributable to the State.
Additionally, the Director has adopted a regulation which expressly sets forth the purpose of § 8 as follows:
(a) Generally, the allocation formula described in this chapter will result in a fair apportionment of the taxpayer’s net worth and net income within and without New Jersey. However, experience in this and other states which impose similar franchise taxes has shown that due to the nature of certain businesses the formula may work hardships in some cases and not do justice either to the taxpayer or the State. Accordingly, provision is made in such cases for the Director to use some other formula which will more accurately reflect the business activity within New Jersey. [N.J.A.C. 18:7-10.1(a) ]
In its discussion of § 8 our Supreme Court, in F.W. Woolworth Co. v. Director of Div. of Tax., supra, expressed the opinion that the purpose of § 8 was not only to avoid unconstitutional results in light of a palpable misapportionment, but also to avoid perceived unfairness or inequity in the application of apportionment formulas which, perhaps, did not attain consti *82 tutional proportions. Id., 45 N.J. at 497, 213 A.2d 1. The Court also noted that, not only does the Director have broad adjustment authority, but he also has an obligation to adjust a particular allocation formula if it is unfair in that it does not “effect a fair and proper allocation of the [taxpayer’s] entire net income and the entire net worth reasonably attributable to the State.” N.J.S.A. 54:10A-8. F.W. Woolworth v. Director of Div. of Tax., supra at 497, 213 A.2d 1.
In light of his § 8 adjustment authority, and in an effort to avoid unfair or even unconstitutional results in the use of apportionment formulas with respect to multistate enterprises that do not meet the § 6 “regular place of business” test, the Director adopted N.J.A.C. 18:7-8.3(b) which provides as follows:
(b) Reduction in tax for income duplicated on a return filed with another State pursuant to N.J.S.A. 54:10A-8 and this rule — 100 percent allocation factor:
1. Eligibility:
(i) Where the Business Allocation Factor under Section 6 of the Act is 100 percent and the taxpayer in fact paid a tax based on or measured by income to a foreign state, resulting in a duplication of income being taxed, it may, under Section 8 of the Act, apply for a reduction in the amount of its tax. The reduction is available only where the taxpayer in its own right acquired a taxable status in the foreign state by reference to at least one of the criteria described at N.J.A. C. 18:7-1.6 as if the New Jersey Corporation Business Tax Act were the law of that foreign state.
2. Method:
i. An eligible taxpayer computes its reduction on a rider attached to its return by demonstrating that a part of entire net income is duplicated on a return filed with another state. It must attach a copy of all relevant portions of the return filed with the foreign state relating to income reported, the computation of all components of its apportionment fractions and the computation of the tax paid to the foreign state. It must also submit a schedule apportioning all property, receipts and payroll to a common denominator defined consistent with the return. For purposes of calculating the reduction:
(1) It may be based upon only so much of adjusted entire net income appearing on its Corporation Business Tax Return as is reported to the foreign state;
(2) The formula apportionment used in the foreign state may not exceed the Business Allocation Factor as determined under Section 6 of the Act and these rules;
*83 (3) It must be computed by using the lesser of the tax rates of the foreign state or the tax rate under the New Jersey Corporation Business Tax Act.
The Director allowed HRC a § 8 adjustment in accordance with this regulation. As previously noted, however, this procedure did not allow full credit for income taxes paid by HRC to other taxing jurisdictions and provided no credit for net worth or capital taxes paid by HRC to other states. While HRC paid income taxes to other states in the amounts of $50,502 for 1981 and $79,767 for 1982, it received credit for only $37,470 for 1981 (74.2% of amount paid to other jurisdictions) and $62,572 for 1982 (78.44% of amount paid other jurisdictions). The credit is partial, essentially, because a number of the other taxing states, in which HRC has a taxable presence, imposed a tax rate less than New Jersey’s.
With respect to the net worth taxes that HRC paid to other states, the Director has acknowledged that additional credits will be permitted in a fashion that is consistent with the formula for income tax credits set forth in N.J.A.C. 18:7-8.3(b).
The Director maintains that this § 8 adjustment, in accordance with his regulation, produced a fair result. As a matter of fact, in the affidavit of Anthony J. Moran, the superintendent of the audit activity branch of the Division of Taxation, filed in support of the Director’s motion for summary judgment, the assertion is made that the method followed by the Director “is the most equitable and administratively feasible manner in which the out-of-state activities of the taxpayer may be taken into account.” Emphasis supplied.
HRC, in response, does not dispute that the Director has wide latitude in making adjustments pursuant to § 8, but argues that, despite the method selected by the Director, the result must be a fair apportionment since that is the statutory directive of § 8. HRC attacks the Director’s adjustment on the grounds that it attributes to New Jersey an unreasonably high proportion of its total income and net worth. HRC contends that the § 6 three-factor formula provides a fair result in this case, and even if it is not statutorily entitled to its use pursuant *84 to § 6, the Director has the obligation to use it pursuant to § 8 in order to effect a fair and proper allocation.
The Director replies that the § 8 adjustment pursuant to N.J.A.C. 18:7-8.3(b) is fair and that HRC “has not and cannot establish that the amount of tax paid to New Jersey after the credit .. .is disproportionate to its activities in the State.” In this regard, the Director takes the firm position that the three-factor formula cannot be used as a criterion to demonstrate the proportions of HRC’s net income and net worth that are reasonably attributable to this State. The Director, however, does not specify the reasons why the three-part formula does not fairly represent the taxpayer’s business activities in this State.[11]
Although there has not been much discussion in the briefs submitted by the parties with regard to the character of HRC’s business operation it seems beyond dispute that HRC is unitary in nature.[12] See Silent Hoist & Crane v. Taxation Div. *85 Director, 100 N.J. 1, 494 A.2d 775 (1985). In dealing with unitary taxpayers our Supreme Court in F.W. Woolworth Co., supra, observed that:
Under the well settled thesis that the realistic value of the exercise of a franchise in a particular state by a corporation with business activities in more than one jurisdiction is ordinarily not adequately measured by the worth of its assets or income in that state alone, but is enhanced and contributed to by that of the entire enterprise, state franchise tax statutes built on this thesis must provide for a method of proportionate allocation of the totals everywhere to reflect that enhancement. [45 N.J. at 474, 213 A.2d 1]
The Court’s comment in respect to proportionate allocation was in recognition of the fact that, if a business is unitary, it is impossible, as a practical matter, to determine the geographic source of particular values, because all of the activities of an integrated enterprise make some contribution to the production of values throughout the business. Container Corp. of America v. Franchise Tax Board, 463 U.S. 159, 164, 103 S.Ct. 2933, 2939-2940, 77 L.Ed.2d 545, 552-553 (1983); F.W. Woolworth, supra, 45 N.J. at 495, 213 A.2d 1.
Accordingly, although formulary apportionment is inherently imprecise, some form of it is necessary in order to provide an admittedly rough, but fair approximation of the value of a taxpayer’s activities within a particular jurisdiction. The formula set forth in our CBT, when apportionment is deemed appropriate in order to insure that extraterritorial values will not be taxed, is the three-factor formula outlined in § 6.[13] This legislative determination is not surprising in light of the fact that “this formula is a reasonable and practical one and that the average of the three [factors] is ordinarily a fair measure of the proportion of corporate activity within a particular jurisdiction, even though it does not fit perfectly in every situation.” F.W. *86 Woolworth, supra, 45 N.J. at 496, 213 A.2d 1; see also General Motors Corp. v. District of Columbia, 380 U.S. 553, 85 S.Ct. 1156, 14 L.Ed.2d 68 (1965).
The Legislature’s confidence in the general fairness and equity of the three-factor formula is also reflected in the fact that there are no statutory provisions permitting specific allocation[14] or separate accounting,[15] the usual methods by which formulary apportionment methods are assailed. F.W. Woolworth Co., supra, 45 N.J. at 480, 213 A.2d 1; Silent Hoist, supra, 100 N.J. at 13, 494 A.2d 775.
In addition, even though it does not provide mathematically precise territorial allocations of value, the legislatively designated three-factor formula has received judicial approval. See Butler Bros. v. McColgan, 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942); General Motors Corp. v. District of Columbia, supra (in which the Court noted that there has been a widespread acceptance of the three-factor formula). The three-part formula has not only obtained the approval of the United States Supreme Court, but is considered the “benchmark against which other apportionment formulas are judged.” Container Corp., 463 U.S. at 170, 103 S.Ct. at 2943, 77 L.Ed.2d at 556.
Container characterized the formula as it did “precisely because payroll, property, and sales appear in combination to reflect a very large share of the activities by which value is generated.” Id., 463 U.S. at 183, 103 S.Ct. at 2949, 77 L.Ed.2d at 565. As further observed in Silent Hoist, supra, the three-factor method is the basis for the division of income for state *87 taxation in 45 states. 100 N.J at 7, 494 A.2d 775. Moreover, with respect to business income, the traditional three-factor formula is the methodology offered by the Uniform Division of Income for Tax Purposes Act (UDITPA), 7A U.L.A. 91 (1978), for apportionment purposes. UDITPA has been adopted in at least 23 states. See Container, supra, 463 U.S. at 165, 103 S.Ct. at 2940, 77 L.Ed.2d at 553.
Lastly, the Director’s own regulation at N.J.A.C. 18:7-10.1 provides that, as a general matter, the three-factor formula will normally result in a fair apportionment. Absent some explanation from the Director as to why this traditional formula is deficient or does not do justice to this State, e.g., because of the nature of HRC’s business enterprise the factors are not fairly reflective of HRC’s business activity in New Jersey,[16] I see no reason why this formula should not be used as a “benchmark” against which to judge the fairness of the Director’s § 8 adjustment in this case. Cf. F.W. Woolworth Co., supra, 45 N.J. at 499, 213 A.2d 1 (“If [the Director] decides no relief is equitably warranted we think he should indicate why he reaches that conclusion.”).
Preliminarily, however, it must be iterated that the Legislature has given the Director wide latitude in fashioning an appropriate adjustment pursuant to § 8. The Legislature recognized that formula apportionment has a degree of imprecision and, as a result, some minimal amount of multiple taxation might result. Id. at 495, 213 A.2d 1. Thus, plaintiff’s idea of what is the fairest method of apportionment is not controlling. The question is not whether one technique as opposed to another should be used, but whether the method selected by the *88 Director produces a degree of unfairness that amounts to “substantial inequity.” Id. at 497, 213 A.2d 1.
Initially, HRC challenges the Director’s regulatory tax credit procedure because the limitations it imposes causes less than full credit for taxes paid to other jurisdictions to be given. Specifically, the credit is limited because: (1) it can only be based upon so much of the taxpayer’s entire net income that is reported to the other taxing state, (2) the business allocation factor cannot exceed that which is determined under § 6 of our CBT, and (3) the lower of the New Jersey or foreign state tax rate must be employed.
If the foreign state had a CBT identical in all respects to that of this State then, of course, the credit would be complete and the credit procedure would be reflective of a taxpayer’s activity. However, because of differences in taxing statutes, specifically, in tax rates, the credit provision does not assure that it will result in a fair reflection of a taxpayer’s activities in a particular state.
HRC offers an example to demonstrate the misapportionment that can result:
For example, if the taxpayer had one-half of its rental property and one-half of its income in Texas, with the other one-half of its property and income attributable to New Jersey, defendant’s method would result in 100% of such taxpayer’s income — including that generated by the Texas property — being taxed by New Jersey with no offsetting credit. This is because Texas has no income tax and there would thus be no basis under N.J.A.C. 18:7-8.3 for any credit for income taxes paid.
The misapportionment occurs because the credit is given based on the amount of tax rather than the amount of the tax base, here entire net income, that would be attributable to business activity in the foreign state. If credit were given at the level of the tax base, differing tax rates would be of no significance.[17] In this case HRC was subject to income taxes in *89 seven other states that had tax rates less than New Jersey’s for the tax years at issue. Due to the limiting features of the Director’s regulatory credit procedure the difference in franchise taxes attributable to HRC’s net income base was as follows:
Income base portion of HRC’s franchise taxes computed under the § 6 three-factor formula.
1981 1982
$13,888 $23,450
Income base portion of HRC’s franchise taxes computed in Director’s revised assessment after credit for income taxes paid to other jurisdictions.
1981 1982
$34,837 $65,640
The revised taxes measured by HRC’s net income base are 250.8% of the income portion computed under the three-factor formula for 1981 ($34,837 -h $13,888 = 250.8%) and 279.9% for 1982 ($65,640 -f- $23,450 = 279.9%) and constitute income base tax increases of 150.8% for 1981 ($34,837 - $13,888 = $20,949 h- $13,888 = 150.8%) and 179.9% for 1982 ($65,640 - $23,450 = $42,190 h- $23,450 = 179.9%).
The reason for the increases is obvious. HRC’s business allocation factor for 1981 calculated pursuant to the three-factor formula was .192074 which when applied to its entire net income base of $803,413 produced an allocation of net income to New Jersey of $154,315 ($803,413 X .192074 = $154,315). Applying New Jersey’s 9% tax rate produced a net income tax for 1981 of $13,888 ($154,315 x 9% = $13,888). The partial credit, essentially because of differences in state tax rates, had the effect of either increasing the business allocation factor applicable to HRC in New Jersey or increasing New Jersey’s tax rate. *90 If one starts with HRC’s 1981 entire net income base of $803,413 and utilizes New Jersey’s 9% tax rate, HRC’s business allocation factor is increased from approximately 19% (.192074) to approximately 48% (.481792) as follows:
Director’s revised net income tax for 1981 = $34,837 ~ tax rate of 9% = an allocated income base of $387,078 ~ HRC’s 1981 entire net income of $803,413 = .481792.
If the business allocation factor calculated under the three-factor formula of .192074 is not changed, New Jersey’s effective tax rate becomes 22.58% as follows:
HRC’s 1981 entire net income of $803,413 X business allocation factor of .192074 = an allocated income base of $154,315. The Director’s revised 1981 income tax of $34,837 is then divided by the allocated income base of $154,315 to equal 22.58% ($34,837 -h $154,315 = 22.58%).
The computations for tax year 1982,. following a similar procedure, demonstrate that either HRC’s business allocation factor was increased to .511965 or that New Jersey’s effective tax rate was increased from 9% to 24.26%.
The increases in either business allocation factors or effective tax rates in this case bear no relevant relationship to the level of HRC’s business activities either within or outside New Jersey, For example, if we accept the increases reflected in business allocation factors, it would mean that approximately 50% of HRC’s net income is attributable to its New Jersey business activities despite the fact that only approximately 12% of the total value of its property was located in New Jersey, only 13% of its total income was derived from its New Jersey holdings and only 33% of its total payroll was attributable to New Jersey.
The differences are even more dramatic when one considers the entire net worth portion of HRC’s franchise tax. N.J.A. C. 18:7-8.3(b) makes no allowance for net worth or capital taxes paid to other jurisdictions, presumably because that portion of the CBT was the subject of a phased-out repeal in L. 1982, c. 55. Nevertheless, the Director has conceded that he will provide *91 credit for net worth taxes paid by HRC in a procedure consistent with N.J.A.C. 18:7-8.3(b).
HRC calculated the net worth portion of its CBT pursuant to the three-factor formula for 1981 and 1982 which produced a net worth based tax of $10,595 for 1981 and $10,256 for 1982. The Director revised these portions of HRC’s franchise tax to $55,159 for 1981 and $53,994 for 1982. This revision reflects a 100% allocation to New Jersey of HRC’s entire net worth for the two tax years or a 421% increase in net worth taxes for 1981 and 426% for 1982.
Assuming, however, HRC receives full[18] credit for the net worth taxes that it paid in those years to other taxing states that would not substantially reduce the net worth taxes payable in New Jersey. This is due to the fact that the net worth taxes paid to other jurisdictions amounted to only $4,125 in 1981 and $4,972 in 1982. Assuming full credit, however, HRC’s net worth taxes in 1981 would be $51,034 ($55,159 — $4,125 = $51,034) and $49,022 ($53,994 - $4,972 = $49,022) in 1982. The result is a net worth tax that is 382% greater in 1981 and 378% greater in 1982 than that which was computed under the three-factor formula. The revised net worth taxes, even with credits for taxes paid to other jurisdictions, would reflect that approximately 92.5%[19] of HRC’s net worth, essentially the full value of its assets, would be attributable to New Jersey while the facts reveal that only 12% of the total value of its property was located in New Jersey during the tax years at issue.
*92 The results for 1982 with respect to net worth taxes[20] would be substantially the same. Assuming a full tax credit of $4,972 for 1982, the net worth taxes produced would reflect that 90.8% of HRC’s net worth was attributable to New Jersey while only 12% of its property was located in this State during 1982.
The Director has not disputed any of the facts presented by HRC nor has he challenged the mathematical computations or any of the components. Defendant’s position is simply that he “makes no concession that only 12% — 14% of plaintiff’s net income had its actual source in New Jersey during 1981 and 1982,” and relies on the defense that HRC “has not and cannot establish the true amount of its net income properly attributable to New Jersey.”
All of the courts have acknowledged that there is no precise way to measure the in-state values of a concededly unitary business, which is exactly why formulary apportionment has become the rule. See Container, supra, 463 U.S. at 164-166, 103 S.Ct. at 2939-2940, 77 L.Ed.2d at 552-553. It is also clearly understood that the established apportionment formulas are necessarily imperfect and there is a margin of error in all of them. Id., 463 U.S. at 184, 103 S.Ct. at 2950, 77 L.Ed.2d at 565.
The Director, however, cannot be permitted, under the shelter of imprecision in allocation formulas or by ignoring the nature of a given enterprise, to project the taxing ability of the State beyond his legislatively granted power. As our Supreme Court has noted in the context of a local property tax case: *93 Needless to say, relief must be granted “upon an appropriate basis requiring the individual taxpayer to prove no more than sensibly can be expected of him.” Id. at 31, 166 A.2d 763.
*92 Mathematical perfection in taxation is unobtainable, and hence relief should not be denied merely because the result lacks absolute precision. The injured taxpayer is entitled to practical relief. [In re Appeals of Kents, 2124 Atlantic Ave, Inc., 34 N.J. 21, 33, 166 A.2d 763 (1961)]
*93 The Director’s discretion in making § 8 adjustments is not unfettered. The Legislature has prescribed the standard by which he is to be guided. That is “to effect a fair and proper allocation of [a taxpayer’s] entire net income and .. .entire net worth reasonably attributable to the State.” N.J.S.A. 54:10A-8. Providing partial credit for taxes paid to other states, in this case, does not relieve the Director of his statutory responsibility of fair apportionment. If he does not meet this standard, the result is plainly unreasonable and cannot be permitted.
There is nothing in the record of this case to demonstrate that the traditional three-factor formula does not, in fact, reflect the extent of HRC’s business activity in this State. So far as the record is concerned the “benchmark” formula displays a reasonable relationship to HRC’s corporate activities both within and outside New Jersey. In comparison, the conclusion is inescapable that the Director’s tax credit regulation as applied to HRC does not bear a rational relationship to values connected with this State.[21] Therefore, the § 8 adjustment made by the Director cannot be permitted to stand.
The Director, in the brief filed on his behalf, has indicated that if this court should determine that his § 8 adjustment produced an unfair or unequitable result, then this matter should be remanded to him to permit further adjustments pursuant to § 8.
If there was anything in the record, or if the Director had offered something, that demonstrated some deficiency in the three-factor formula (other than the inherent imprecision in any apportionment formula) as applied to HRC’s business enterprise, the suggestion would be appropriate. In this case, however, the Director has overreached and has made no effort to show that he has not done so. Absent some explanation, I see *94 no reason why the standard formula should not be applied. This conclusion is not out of harmony with the declared legislative purpose of § 8. HRC’s alternative arguments, therefore, based on constitutional grounds need not be addressed.
Two additional points, however, require some brief mention. First, the Director, through the affidavit of Anthony J. Moran, contends that the tax credit provision of N.J.A.C. 18:7-8.3(b) provides the “most ... administratively feasible manner in which the outrof-state activities of the taxpayer may be taken into account.” This court realizes that the Director has administrative difficulties and that his regulation lends itself to administrative feasibility — but this does not justify any result, regardless of the distortion. The product of a convenient formula may not always be an acceptable result. In this case the result is just not tolerable.
Second, the Director contends, again through Moran’s affidavit, that allowing the use of the § 6 three-factor formula by means of a § 8 adjustment “is not only undesirable but would also have the effect of negating the unconditional statutory requirement that a taxpayer must maintain a regular place of business outside of this state in order to allocate net income and net worth.”
I simply do not agree. Counsel for the Director has argued that the “regular place of business” requirement as defined in the Director’s regulation is in no way related to how much or how little of a taxpayer’s business activities are conducted out-of-state. As also noted by defendant’s counsel, “the regulation attaches [no] significance to the quantum of a taxpayer’s extraterritorial income generating activity in determining the existence of a regular place of business.” This is precisely why § 8 assumes such great importance in this case. Section 8 was legislatively designed to assure fairness when § 6 did not perform its assigned task. Section 8 takes into account and makes extremely pertinent, those very activities (indicating taxable presence outside this State) which the Director argues *95 are irrelevant in determining whether a taxpayer maintains a regular place of business outside this State.
There is nothing in the language of § 8 which precludes use of the § 6 three-factor formula. Absent some explanation as to why it is inappropriate, as previously noted, there is every reason to use it in this case.
In sum, I conclude that the appropriate business allocation factor in this case is the § 6 three-factor formula. I, therefore, grant HRC’s motion, and deny the Director’s crossmotion, for summary judgment. The assessment of the Director of the Division of Taxation will be adjusted to reflect this determination.

Since the tax years at issue the Legislature has enacted a phased-out repeal of the net worth provision of the CBT. L. 1982, c. 55.

The apportionment fraction ultimately determined, whether 100% or less, is then multiplied by the tax rate to determine tax liability. The applicable income tax rate was 9%, N.J.S.A. 54:10A-5(c), while the net worth tax rate was 2 mills, N.J.S.A. 54:10A-5(a).

Those other states in which HRC was authorized to do business for the tax years in issue were Alabama, Connecticut, Delaware, Florida, Georgia, Maryland, Massachusetts, Mississippi, New York, Pennsylvania, Rhode Island, South Carolina and Virginia.

HRC states that since the tax returns were prepared at the Woodbridge office, the use of that address was to facilitate responses to any inquiries regarding the tax returns.

HRC’s 1981 and 1982 tax returns reflected the following allocation factor computations:
1981 1982
Property fraction 12.5204% 12.0707%
Receipts fraction 14.3220% 12.2366%
Payroll fraction 30.7799% 32.6750%
Allocation factor 19.2074% 18.9941%
(average of the three fractions)

HRC was given credit for the New Jersey franchise taxes previously paid but the Director added penalties and interest for the unpaid increased amounts.

 The regulation then proceeds to list a number of examples to further assist the reader in making a determination of what constitutes a regular place of business.

Professor Jerome R. Hellerstein has noted that while the holding in Hoeganaes may be a reasonable construction of the statutory language, "maintaining a regular place of business,” yet it goes against the policy consideration underlying formulary apportionment, i.e., “taxability in another State and the right to apportion income under the laws of the taxing States ought to be co-terminus.” Hellerstein, State Taxation, I Corporate Income and Franchise Taxes (1983), f 6.12 at 250.
In this regard it is appropriate to state that I am in full agreement with Professor Hellerstein’s view. I believe that Hoeganaes was incorrectly decided and that Judge Matthews’ dissent in Hoeganaes was absolutely right. The statutory language, "maintaining a regular place of business," should have been liberally construed to effect fair apportionment. In view of the fact that Hoeganaes is an Appellate Division decision, however, I have no alternative but to follow it.
Jt is also interesting to note that the State and Local Expenditure and Revenue Policy Commission (S.L.E.R.P.) has recommended in a draft of its final report, that “the present CBT requirement that a corporation must maintain a regular place of business in a state in order to apportion its income to that state” be eliminated.

HRC asserts that this concept is supported by analogous tax statutes, i.e., the Corporation Income Tax Act, N.J.S.A. 54:10E-1 et seq. and the Financial Business Tax Law, N.J.S.A. 54:10B-1 et seq. neither of which require a regular place of business as a prerequisite to utilization of the three-factor apportionment formula. I am not convinced that these other taxing provisions fully support HRC's position inasmuch as each act utilizes different language as the statutory test for formulary apportionment. Perhaps the Legislature purposely used different language to insure different standards. Perhaps not. In any event, HRC’s position is not bolstered by the interpretation of these other taxing acts.

See n. 8 supra.

ln all fairness to the Director’s position, at oral argument on the motions for summary judgment, counsel for the Director stated that the three-factor formula was not appropriate in this case because a portion of the income generated by HRC may have been attributable to the efforts of employees other than those of HRC, specifically, the employees of HRC's parent, AHC. Since, for tax purposes, the Director cannot look beyond the activities of the taxpayer, HRC, the Director takes the position that if some adjustment, other than his tax credit methodology is appropriate — it is the taxpayer’s burden to establish what that adjustment should be.
The Director’s concern is that the three-factor formula does not take into account the income-generating activities of AHC’s personnel on behalf of HRC. The fallacy in this position is that there is nothing in the record, nor has the Director offered anything, to demonstrate that this activity by AHC personnel requires the attribution of values in proportions different than those percentages achieved through use of the three-factor formula to HRC's property, receipts and payroll.
Additionally, even if it is assumed that a portion of HRC’s business values are attributable to AHC's personnel, the uncontroverted facts demonstrate that these activities were not predominantly attributable to New Jersey.

The California Supreme Court in defining a unitary business has stated that, "if the operation of the portion of the business done within the State is dependent upon or contributes to the operation of the business without the State, the operations are unitary." Edison California Stores, Inc. v. McColgan, 30 Cal.2d 472, 183 P.2d 16 (1947). The United States Supreme Court indicated *85 that the functional meaning of the unitary concept "is that there be some sharing or exchange of value not capable of precise identification or measurement .. .which renders formula apportionment a reasonable method of taxation.” Container Corp. of America v. Franchise Tax Board, 463 U.S. 159, 165, 103 S.Ct. 2933, 2940, 77 L.Ed.2d 545, 553-554 (1983).

At oral argument, counsel for the Director conceded as much.

Specific allocation "refers to the method of dividing a tax measure (in whole or in part) by tracing particular property, receipts or income to their source or other connection with a State, and attributing the item in toto to that State." Hellerstein, op. cit., supra, f[ 8.4 at 328.

According to Professor Hellerstein, separate accounting "is a technique of carving out of the overall business of the taxpayer the activities taking place, the property employed in, and the income derived from, sources within a single State, and by accounting analysis ascertaining the profits attributable to that portion of the business." Id., If 8.3 at 323.

For example, in Metromedia, Inc., supra, the Court approved of the use of an "audience share” within the receipts fraction due to the character of the taxpayer’s business, i.e., a multistate television and radio station enterprise. 97 N.J. at 323-328, 478 A.2d 742. There is nothing in the record of this proceeding which demonstrates a similar deficiency in the traditional three-factor method as applied to HRC’s business enterprise.

 One noted legal commentator has observed that under a corporate tax structure in which the tax base is divided by apportionment formula, "credits for taxes paid to other jurisdictions are inappropriate .. .since the base of the tax .. .is limited .. .to the segment of the income or other tax base derived *89 from, or otherwise attributable to, the taxing State.” Hellerstein, op. cit., supra, U 8.2 at 301-302.

Due to the requirements of N.J.A.C. 18:7-8.3(b) it is not known whether HRC would indeed receive credit in full for net worth or capital taxes paid to other taxing jurisdictions for tax years 1981 and 1982.

The total net worth stated on HRC’s 1981 CBT return was $27,579,369. The 1981 net worth tax rate was 2 mills. Assuming full credit for net worth taxes paid to other states of $4,125 would produce a New Jersey net worth tax for 1981 of $51,034 ($55,159 — $4,125 = $51,034) which when divided by the 1981 tax rate of .002 would produce a net worth of $25,517,000. This product divided by HRC’s reported net worth of $27,579,369 would result in 92.5% of HRC’s net worth considered attributable to New Jersey.

 HRC reported its net worth on its 1982 CBT return at 526,996,875. The revised net worth taxes less a full tax credit of 54,972 for 1982 would be 549,022 (553,994 — 54,972 = 549,022). The resultant taxes divided by the net worth tax rate of .002 would produce a net worth of 524,511,000. This figure divided by HRC’s reported net worth of 526,996,875 for 1982 results in approximately 90.8% of HRC's net worth considered attributable to New Jersey (524,511,000 526,996,875 = 90.8%).

 See n. 17 supra.